## NORTHWESTERN NATIONAL INSURANCE CO. OF MILWAUKEE, WIS., v. AVERILL, INSURANCE COMMISSIONER

(42 P. (2d) 747)

*Guy E. Kelly,* of Tacoma, Wash., for appellants.

*I. H. Van Winkle,* Attorney General, and *Willis S. Moore,* Assistant Attorney General, for respondent.

CAMPBELL, C. J. Plaintiff is a fire insurance corporation organized under the laws of the state of Wisconsin. It brought this action against the insurance commissioner of this state, on a stipulation of facts, for the purpose of testing the constitutionality of the Oregon statute relating to the appointment and licensing of more than one agent in the cities of this state: Oregon Code 1930, §§ 46-1604, 46-1608.

The circuit court entered judgment against plaintiff and it attempted to appeal to this court by giving

a notice of appeal not signed by appellant or by any attorney of this court. The notice of appeal came to our attention and the question is, should the court on its own motion dismiss the appeal?

We agree with counsel that it is not the policy of this court to dismiss appeals on mere technicalities. Neither is it the policy of the court to assume jurisdiction of causes unless the plain provisions of the statute conferring jurisdiction have been complied with. The appeal should be dismissed on the authority of *Estate of Nelson,* 101 Or. 14 (198 P. 892). The principles announced in that case are in strict conformity with the statute, and we see no reason for overruling that authority in the instant case.

The appeal will be dismissed.

It is so ordered.

---

BAILEY, J. (concurring). The decree dismissing this suit was entered in the circuit court for Marion county on June 29, 1934. Thereafter, on July 10, 1934, a notice of appeal signed by "Guy E. Kelly, attorney for applicants and appellants", with postoffice address at Tacoma, Washington, was filed in said court, with acknowledgment of receipt of a copy thereof on said date by one of the attorneys for the defendant.

In due time the transcript and appellants' abstract and brief were filed with the clerk of this court and on September 28, 1934, the attorney general and his assistant, representing the insurance commissioner, filed here respondent's brief.

At the time set for the argument, this court *sua sponte* questioned its jurisdiction to hear the appeal, on the ground that the notice of appeal had not been

signed by either of the plaintiffs or by an attorney duly admitted to practice in the courts of this state, based upon the decision in the case of *In re Nelson's Estate,* 101 Or. 14 (198 P. 892). The argument of the case was postponed to permit briefs to be filed on the question of jurisdiction.

It is admitted that the individual who signed the notice of appeal and appeared here as representative of the appellants has not been admitted to practice law in this state, although he asserts that he is a duly admitted and regularly practicing attorney of the state of Washington and has been admitted to practice in other states.

In the instance of *In re Estate of Nelson,* supra, an attempt was made to appeal from the county court to the circuit court, with the notice of appeal signed by a regularly admitted and practicing attorney of the state of Washington, and the appeal was dismissed by the circuit court on the ground that the notice was not signed by the appellant or by any attorney authorized to practice law in this state. On appeal to this court the circuit court's order of dismissal was affirmed. This court there based its decision on §§ 550, 1074, 1076, 1081 and 1093-1, Oregon Laws, which sections are now, respectively, §§ 7-503, 32-101, 32-103, 32-108 and 32-503, Oregon Code 1930.

Section 7-503, supra, provides that in case appeal is not taken at the time the decision, order, judgment or decree is rendered, the party desiring to appeal shall "cause a notice, *signed by himself or attorney,* to be served upon the adverse party" or his attorney. An attorney is defined by § 32-101, supra, as "a person authorized to appear for and represent a party in the *written proceedings* in any action, suit or proceeding in any stage thereof". An attorney who does not repre-

sent a party in the "written proceedings" may appear and represent the party in court, in which event "he is known in the particular action, suit or proceeding as counsel only": § 32-101, supra. Any one who has been admitted by the supreme court to practice law in this state may act in the capacity of *attorney*: § 32-103, supra. "When it appears that a person of any other state or country is an attorney of the highest court in such state or country he may appear as *counsel* for a party in any action, suit or proceeding in court * * * *but not otherwise*:" § 32-108, supra. Section 32-504 declares that it shall be unlawful for any one to engage in the practice of law in this state "without first having been duly admitted and licensed as an attorney at law in the courts of this state". [Italics ours.]

For our present purpose we shall assume that the individual representing himself to be attorney for the appellants was duly admitted to practice law in the state of Washington, but he has never applied to, or been admitted to, practice law in this state. He was, therefore, at the time of appearing here, not an attorney within the meaning of the sections of our code above referred to, "authorized to appear for and represent" the appellants as an attorney in signing the notice of appeal, or in other proceedings in this court. He might have acted as counsel only, which office would not have authorized him, under the sections already mentioned, to sign the notice of appeal as attorney on behalf of the appellants.

An appeal to this court from the circuit court is a new proceeding: *Shirley v. Birch*, 16 Or. 1 (18 P. 344); *Johnson v. Prudential Life Insurance Company*, 120 Or. 353 (252 P. 556). And since notice of appeal was not given at the time of the rendering of the decree in the circuit court, the only method of appealing

was by preparing a written notice, signed by the appellants or their attorney, and serving the same on the adverse party or his attorney: § 7-503, supra.

Ordinarily, the precedent of *In re Estate of Nelson*, supra, inasmuch as that decision has not been questioned during the years, some 14, since it was rendered, should be considered conclusive of the question now before us, unless it is wrong in principle and out of harmony with the great weight of authority in other jurisdictions. In the case at bar it is not contended that the Washington attorney was in any way associated in the circuit court with an attorney duly admitted to practice law in Oregon, nor is the contention made that notice of appeal was actually served by any person who was an attorney of this court and who was representing the appellants on this appeal but had omitted to sign his name on the notice of appeal, or that a resident attorney was in any way associated with the nonresident attorney.

In the case of *North Laramie Land Company v. Hoffman,* 27 Wyo. 271 (195 P. 988), the court on rehearing permitted what it labeled as ''the unsigned petition in error'' to be amended by adding thereto the name of a resident, who had acted as attorney in the lower court. In a former opinion, 26 Wyo. 327 (184 P. 226), the supreme court of Wyoming had ordered the appeal dismissed on the ground that the petition in error was signed only by a nonresident attorney not admitted to practice in Wyoming. According to the practice in that state the party desiring to appeal was required to file in the district court a petition in error setting forth the errors complained of, and at the same time to file a ''praecipe for summons'', which was required to contain certain information as to the time and place of filing the petition in error and was re-

quired "to be served in the manner provided by law for service of summons in civil actions".

The nonresident attorneys in that case had prepared and sent to the local attorney who was associated with them in the case the petition in error, and the latter attorney neglected to sign it but filed it and filed with it an application for the clerk of the district court to transmit to the supreme court certain original papers, and in addition filed a "praecipe for summons in error". At the time of presenting the papers for filing he requested the clerk to enter his name on the records of the supreme court as attorney for plaintiff in error. The court, under the statute providing for amendments, permitted the petition in error to be amended by adding the name of the resident attorney. In passing upon this matter, the court said: "The petition in error not having been subscribed by any one having authority to subscribe it, it stood as an unsigned petition. But by the clear weight of authority, under our and similar code provisions, a petition not signed or improperly signed, whether it be a petition to commence a civil action or a petition in error, is not a nullity, and the failure to properly subscribe the same is merely a formal defect, which may be waived, or may be cured by amendment; and to correct a mere matter of form, an amendment of a petition in error may be allowed even after the expiration of the time for bringing the proceedings": citing numerous authorities.

In referring to its former decision in the same case, the court observed:

"It is alleged in the petition for rehearing, and contended in support thereof, that this court erred in deciding that the petition in error was not sufficient to constitute the commencement of proceedings in error, or to give the court jurisdiction of the subject matter of the action. The correctness of the decision that a

non-resident attorney who has not been admitted to practice in this state either generally or specially in the particular cause can not properly sign alone a petition in error, and that a petition so signed is defective, is not directly or specifically challenged, nor would we feel inclined to recede from the decision on that point."

Had it not been for the fact that a local attorney was associated with the nonresident attorneys in that instance, the "defective" petition in error could not have been amended. In such case there would have been nothing to amend.

This court, speaking through Mr. Chief Justice BURNETT, in the case of *Lee v. Gram,* 105 Or. 49 (196 P. 373, 209 P. 474, 27 A. L. R. 1001), with reference to appeals to this court, said:

"It is said in Section 548, Or. L.: 'A judgment or decree may be reviewed as prescribed in this chapter, and not otherwise.'

"The conditions established by that legislation include the service of the notice of appeal, the giving of an undertaking (Section 550, Or. L.) ; and the filing of a transcript (Section 554). As the supreme court is a court of limited jurisdiction, a party desiring to appeal must at his peril frame the papers necessary to his appeal as required by the statute; for 'not otherwise', in the language of Section 548, can this court acquire authority to decide the questions involved in an appeal. The party appealing must himself without aid from this court supply the documents necessary to his appeal. Being without jurisdiction until he does so, we can not reach out an aiding hand and help him into court. It follows, therefore, that we can not give permission to the plaintiff here to amend her notice of appeal, for the reason that such action is beyond our power. The plaintiff's motion to amend the notice and the undertaking must therefore be overruled."

The court proceeded, however, to state that in 1899 the legislature had provided what should be contained in the notice of appeal, and that the court could not require more. The opinion further said that the court would consult the record in order to determine the date when the judgment was entered, and a mere mistake in the notice of appeal concerning the date would not vitiate the appeal.

Beginning with the case of *Oliver v. Harvey*, 5 Or. 360, this court has held that "the *service* and *filing* of the *notice* of appeal is indispensable in order to enable the appellate court to obtain jurisdiction of the cause. A waiver of the filing by a stipulation of the parties is not the equivalent of the filing of the notice; for consent, although it may waive error, can not confer jurisdiction". This case has been referred to with approval in many instances, the most recent of which to come to our knowledge is *Union Central Life Insurance Company v. Deschutes Valley Loan Company*, 139 Or. 222 (3 P. (2d) 536, 8 P. (2d) 587).

The opinion in *Oliver v. Harvey*, supra, cited as its only authority the case of *Bonds v. Hickman*, 29 Cal. 460. In this latter case the court stated:

"It is provided by section three hundred and thirty-three of the Practice Act, that 'a judgment or order in a civil action, except when expressly made final by this Act, may be reviewed as prescribed by this title, and not otherwise;' and section three hundred and thirty-seven provides that an appeal shall be taken by filing with the Clerk of the Court in which the judgment or order is entered, a notice of appeal, and serving a copy thereof upon the adverse party or his attorney. That is the only mode prescribed by the Act in which an appeal to the Supreme Court can be taken. The filing of the notice of appeal is indispensable, in order to enable the appellate Court to obtain jurisdiction of the cause. (*Hastings v. Halleck*, 10 Cal. 31; *Buffandeau v. Ed-*

*mondson,* 24 Cal. 94). A waiver of the filing by the stipulation of the parties is not the equivalent of the filing of the notice, for consent, though it may waive error, can not confer jurisdiction. (*Coffin v. Tracy,* 3 Caines 129; *Low v. Rice,* 8 John. 409; *Linsay v. McClelland,* 1 Bibb. 262; *Ormsby v. Lynch,* Litt. Selec. Cases, 303; *Banks v. Fowler,* 3 Litt. 332.)''

That court then proceeded to state that ''admitting the necessity of filing the notice of appeal as an essential part of the appellate proceedings by which the appellate court acquires jurisdiction, the real question is what is competent evidence in this court to prove or disprove the filing of the notice''. It appears from the law of California as it then existed that the notice and endorsement formed a part of the record in the trial court and that neither the notice nor the endorsement had ''any place as original papers in the appellate court''. It was provided that either a copy of the notice with endorsement thereon might be certified by the clerk of the trial court to the appellate court, or a certificate of the attorneys was permitted to take the place of the official certificate of the clerk, and the parties might ''substitute a brief statement of the notice and its filing in the place of complete copies''. If this alternative was chosen, the certificate of the attorneys was to have the same value and be ''entitled to the same effect as evidence'' as though complete copies were certified by the clerk.

In that instance the parties stipulated that ''notice of appeal was admitted as duly filed and served, also the filing of appeal bond, insertion of copies waived''. The respondent moved ''that the appeal be dismissed on the ground that the court had no jurisdiction of the case, because, as he alleged, no notice of appeal was filed''. This motion was based on a certificate of the

clerk of the district court and an affidavit stating that in fact no notice of appeal was filed. It was held that if the stipulation was entered into by respondent under a mistake of fact, as was alleged in his affidavit, and its operation was injurious to him, doubtless it was competent for the lower court, upon application, to relieve him from it, but that the supreme court was powerless so to do, because the original stipulation was filed in the trial court and the appellate court could not amend the documents constituting the transcript.

The opinion of the California court amply supports the decision of this court in *Oliver v. Harvey*, supra.

In 3 C. J. 1230, § 1333, it is said: "The notice of appeal must be served on the adverse party or parties or their attorneys, or on the clerk of the court, or on both, as required by the statute, and in the mode prescribed, and such service is generally essential to appellate jurisdiction." Section 1336 in the same volume is in part as follows: "As a general rule, when a statute or valid rule of court requires service and filing or entry of a notice of appeal at or within a prescribed time, as during the term, before, at, or after rendition or entry of judgment, or within the time limited for appeal, etc., a compliance with the statute in this respect is essential  *  *  *." See also 3 C. J. 1249, § 1363.

California has been referred to and cited as one of the states in which the appellate court acquires jurisdiction by voluntary appearance as well as by service of notice of appeal. In this connection attention is directed to 2 Cal. Jur., § 117, reading as follows:

"It is well established that an appellate court may obtain jurisdiction of an appeal as well by voluntary appearance by an adverse party as by service of notice of appeal upon him. The requirement that notice of appeal be served upon the adverse party is for the protection of such adverse party, and the service of the

notice, like service of a summons, may be waived by him or his attorney, and is waived by a voluntary appearance. A mere waiver of service, however, is not effectual unless followed by some act equivalent to an appearance by which the party would be bound by the judgment of the court. As the omission to serve an adverse party goes to the jurisdiction of the appellate court, a failure to raise the objection until petition for rehearing filed does not waive the objection, there being no appearance by the party not served.

"The service of notice of appeal has a twofold purpose—first, to give the appellate court jurisdiction of the person of the respondent, and, second, to give it jurisdiction of the subject matter of the appeal; and since jurisdiction over the subject matter can never be conferred by consent, the voluntary appearance of the respondent must be made within the time in which service of notice upon him would be effectual to vest jurisdiction of the appeal in the appellate court. To authorize an appearance to be made thereafter would be to confer jurisdiction by consent. * * *"

Reverting to our own state, we find in *Baskin v. Marion County,* 70 Or. 363 (141 P. 1014), that the appeal on behalf of Marion county was dismissed because the notice of appeal was not signed by the district attorney, although it was signed by an attorney duly admitted to practice in the courts of this state. This case was referred to in *State ex rel. v. Mart,* 135 Or. 603 (283 P. 23, 295 P. 459), but its correctness was not questioned.

In *Estate of Dixon,* 116 Or. 411 (241 P. 333), the appellant stated that the appeal was to the circuit court, and this court there well said:

"This court has gone a long way in sustaining appeals wherein the notice is not technically correct. See *Holton v. Holton,* 64 Or. 290 (129 P. 532), *Smith v. Dwight,* 80 Or. 1 (148 P. 477, 158 P. 573, Ann. Cas. 1918D, 563), and *Farmers & Fruit Growers' Bank v. Davis,* 93 Or. 655 (184 P. 275). We have even gone to

the extent of sustaining a notice where the name of the court to which the appeal was taken was left blank on the theory that there was but one court to which an appeal could be taken from the Circuit Court. In other words, we have looked into the transcript to aid the notice of appeal, but we have not yet gone so far as to look into the transcript to contradict the notice of appeal.

"The notice of appeal is the first step to be taken in reaching this court. Until that is served and filed, complying substantially with the statute, the appealing party has no right to file a transcript or any other paper. If he does so, it is so much waste paper. We have gone to the very limit of logic in the cases above mentioned, but to hold this notice sufficient would be to say, practically, that the requirements of the statute may be one by one disregarded, and that we must travel afield and search in the transcript to find out what the party intends by his notice of appeal. We decline to go further in this direction. An appeal is not a constitutional right, but a statutory privilege. The legislature has authority to prescribe the conditions upon which it may be taken, and we decline to disregard those conditions."

Although adjudications from other jurisdictions construing statutes similar to the Oregon code sections under consideration have not come to our attention, it may be helpful to refer briefly to decisions from other states on kindred questions. In *Harkins v. Murphy & Bolanz*, 51 Tex. Civ. App. 568 (112 S. W. 136), the court dismissed the writ of error prosecuted by one not an attorney.

The court in *Clifton v. Carson Naval Stores Company*, 32 Ga. App. 51 (122 S. E. 639), stated that no brief filed by one not an attorney of that court could be considered and "where no appearance is made for the plaintiff in error other than by the filing of such brief, the case will be dismissed for want of prosecution".

The Idaho supreme court in *Anderson v. Coolin*, 27 Idaho 334 (149 P. 286), struck from all the papers in the case originally filed in that court the name of W. B. Mitchell, a nonresident attorney who had not been admitted to practice in that state, and in passing upon this matter the court declared that the laws of Idaho required the employment of a resident attorney, who was to be "held primarily responsible by, and answerable to, the courts of this state for all proceedings having connection with the litigation before the courts". It was further stated that the employment of resident attorneys was not "to be considered a mere subterfuge, or that there is a compliance with the spirit of said section, where an arrangement is made that the name of an attorney may be used as an accommodation, only".

In *Ellis v. Bingham County*, 7 Idaho 86 (60 P. 79), the brief of respondent signed by individuals claiming to be attorneys although not members of the bar of that state was ordered stricken from the files.

To the same effect as the last decision are the cases of *Brice v. Chapman*, 95 Ga. 799 (22 S. E. 525); *Duysters v. Crawford*, 69 N. J. Law 229 (54 Atl. 823); and *Fallon v. The State*, 8 Ga. App. 476 (69 S. E. 592). See also the following: *Gadek v. Kugler*, 6 N. J. Misc. 471 (141 Atl. 561); *New Jersey Photo Engraving Company v. Carl Schonert & Sons, Inc.*, 95 N. J. Eq. 12 (122 Atl. 307).

The court in *Elson v. Sullivan* (Iowa) 186 N. W. 769, refused to dismiss the appeal on the ground "that plaintiff's attorney who assumed to act for her in the matter of taking such appeal had not been duly admitted to practice". No authority is cited by the court for its holding, nor are the facts sufficiently shown to indicate what was done by the individual

representing himself as appellant's attorney. The statement appears, however, with reference to the appellant, that she seemed to have met the "situation by ignoring the assumed attorney and by appearing for herself as she had a right to do, whether wisely or unwisely".

In some states the giving and serving of a notice of appeal are matters regulated by rules of the appellate court. Such appears to be the case in Indiana: *Archey v. Knight,* 61 Ind. 311.

The supreme court of Oregon is not a court of original jurisdiction, except that in certain matters it may, in its own discretion, assume jurisdiction: article VII, section 2, state constitution. The case at bar does not fall within the list of exceptions. As this is a court of appellate, and not original jurisdiction, its authority is limited by the organic act and laws of the state.

On the other hand, the circuit court is one of original jurisdiction. When it has jurisdiction of the subject matter it acquires jurisdiction over the person by certain designated proceedings prescribed by law. One of those methods is by the personal service of summons: §§ 1-501 to 1-505, inclusive, Oregon Code 1930. But voluntary appearance by the defendant is equivalent to the personal service of summons upon him: § 1-517, Oregon Code 1930. There is no limitation as to the time within which a suit or action may be brought in the circuit court or the time within which the summons may be served or the defendant may make a voluntary appearance, so far as the jurisdiction of the circuit court is concerned. True, the defendant may interpose the defense that the suit or action is not brought within the period provided by law. That defense, however, is personal to him and does not affect the jurisdiction of the court.

To contend that the notice of appeal so far as this court is concerned answers the same purpose as a summons in the circuit court is to overlook the distinction in the nature of the jurisdiction of one court from that of the other.

In the case at bar no appearance was made by the respondent in this court until long after the expiration of the sixty-day period in which the appellant had to give notice of appeal. To contend that such an appearance — whether voluntary or otherwise — conferred jurisdiction upon this court would be to ignore the plain mandate of our constitution and the laws enacted in pursuance thereof relating to the jurisdiction of this court. It would also overrule every decision of this court in which the question has been considered. We do not want to be understood by what is said here, however, to mean that a voluntary appearance at any time would obviate the necessity of a compliance with statutory requirements.

Attention has already been directed to, and an excerpt hereinbefore quoted from, 2 Cal. Jur., § 117, to the effect that appearance must be made by respondent within the time in which service of notice of appeal is required, in order to waive the service of notice and to confer jurisdiction upon the court. That part of the excerpt was taken almost verbatim from the case of *Bell v. San Francisco Savings Union,* 153 Cal. 64 (94 P. 225).

In Indiana, where the court's procedure seems to be somewhat liberal, in construing general appearance as a waiver of service of notice of appeal, the court in *National Surety Company v. Button,* 41 Ind. App. 301 (83 N. E. 644), said:

"Finally, appellant contends that mere irregularities in notice are waived by submission without objec-

tion. The failure to move to dismiss an appeal until after the submission of the cause to the appellate court, and the filing of the brief upon the merits of the action, can not serve as a waiver or a bar to the dismissal of the appeal. Michigan, etc., Ins. Co. v. Frankel, supra. The legislature has prescribed the steps necessary to an appeal, and by the provisions made the courts are bound.''

The supreme court of the United States in *Radford v. Folsom*, 123 U. S. 725 (8 S. Ct. 334, 31 L. Ed. 292), held that the appearance of counsel for appellee at a term subsequent to the one in which the appeal was returnable did not waive the failure to make a return at the proper term of court.

No attempt here is made to review all the authorities on the question of waiver of failure to give proper notice by the appellee or respondent's voluntary appearing. We have, however, found no case holding that where the statute requires the appeal to be taken within a definite time, a voluntary appearance by appellee or respondent thereafter conferred jurisdiction on the appellate court to hear the cause.

The circuit court of this state is a court of original and general jurisdiction, as above pointed out, whereas the supreme court has limited and appellate jurisdiction. In the event that the pleadings filed with the circuit court are not verified or signed by the attorney or the litigant, the opposing party may, on motion, have the pleadings stricken from the files: § 1-910, Oregon Code 1930. But the party whose pleadings are so stricken may be permitted to plead over, thereby curing the defect.

The question as to the effect of pleadings filed by an attorney not admitted to practice in the jurisdiction, or by an attorney who has not complied with certain requirements of law, has arisen several times in rela-

tion to *nisi prius* courts. In the case of *DesBrisay v. Mackey,* 12 New Brunswick Rep. 138, the supreme court of New Brunswick was required to pass upon the effect of an act providing that no attorney should be allowed to practice in that court after a certain date, who had neglected to make certain payments toward providing and maintaining a law library. There were called to the court's attention in that instance many English statutes prohibiting the practice of attorneys and solicitors who had not taken out certain annual certificates. The English statutes referred to all or practically all provided that in case the attorney should practice without first obtaining a certificate, he should forfeit a certain amount for each offense and should not be allowed to collect any fees during the time in which he was remiss. The English courts in construing those enactments held that the acts of the attorney while in default would not vitiate the proceedings taken by him, as the punishment was to be imposed upon him and not his clients.

Since the New Brunswick law did not contain provisions as to forfeiture and loss of fees, but was merely prohibitory, the supreme court of that province held that the practice of the attorney was illegal ''and his proceedings consequently irregular''.

These British cases, so far as we can see, have no bearing upon the question now before us. The attorney by failure to comply with the law does not have his name stricken from the rolls and the punishment is meted out to him and not to his clients.

In the case last above cited, the court, in distinguishing between the English statutes and the New Brunswick law, stated:

''If the English statutes had used prohibitory words only against unqualified attorneys practicing, it may

well be doubted whether they would have received the construction that has been given them; but when they declare in addition that an attorney shall not recover any fees for prosecuting or defending actions while he is uncertificated, it seems to imply that the legislature did not intend that the proceedings themselves should be irregular, but, as said by Best, C. J., that they intended to inflict all the punishment of the neglect upon the attorney. We have not overlooked the hardship that, by our construction of the Act, may result to the client from the employment of an unqualified attorney, of whose neglect he may be entirely ignorant; but the hardship is not greater than happens in every case where proceedings are set aside in consequence of a mistake of the attorney in omitting to comply with some rule of practice. The inconvenience of the construction, however, is no reason for departing from the plain meaning of the words of an Act.''

There are many cases in which the trial court refused to dismiss the proceedings because the party appearing for the litigant had not been admitted to practice. For example, we have *Rader v. Snyder*, 3 W. Va. 413, which has been cited several times, to the effect that the court in which the proceedings were instituted should not dismiss them because irregularly presented, but should allow the litigant to obtain a qualified attorney and continue his suit.

We have referred to a few cases relating to proceedings in courts of original and general jurisdiction, only for the purpose of explaining what might be considered misleading statements when quoted without reference to the facts involved.

Reference has already been made to § 7-503, Oregon Code 1930, relating to the manner of taking appeals and the time within which they may be taken from the circuit to the supreme court. The language of this section is clear and explicit. We do not have to resort to

technical rules of construction to understand what the legislature intended. At the very beginning of the section we are told that appeals shall be taken as therein provided "and not otherwise", and, lest we forget, the section ends with the same expression.

The first subdivision refers to the manner in which the notice of appeal shall be served and what it shall contain. The next subdivision relates to the service of the undertaking on appeal. Each of these documents forms an important step in perfecting the transfer of the cause from the circuit court to the supreme court. The first step, i. e., the serving and filing of the notice of appeal with the endorsement of service thereon within 60 days from the entry of the judgment or decree appealed from, is indispensable. Some little latitude, however, is permitted the supreme court as to the second step—the service and filing of the undertaking. When exceptions to the sufficiency of the undertaking are sustained, either as to its form or on the ground of the failure of the surety to justify, a new undertaking may be given and the former one becomes *functus officio*. It ceases to have any place in the record.

If we may disregard or delete the all-important word "whereas" at the beginning of the recitals of the undertaking, and thereby transform the meaning and purpose of the first paragraph of this document to something not intended by those executing or receiving the same, then we are engrafting upon our jurisprudence a novel rule of construction. We are saying that what was intended as a mere bond for costs has by some magic become two instruments, to wit: a notice of appeal and an undertaking, all in one.

The undertaking in the case at bar is not substantially different from practically all undertakings on appeal, especially those of surety companies. What a

saving it would be to the appellant to dispense entirely with the notice of appeal and merely use the printed form of undertaking found in all law offices. Better yet, dispense with both the notice and the undertaking and place the duty on this court to ascertain if there is language in any of the briefs indicating that the appellant had in mind an intention to appeal. If we can not justify this last suggested procedure by reason or logic based on the statutes, recourse can always be had to supposition. In any case it is possible to imagine dire results that could befall the litigant, if we were not disposed to disregard compliance with any particular rule of court or procedure.

There still remain three branches of the government. To the legislative department is entrusted the duty to enact laws conferring the right of appeal and regulating the manner of exercising that right. These laws should be respected by the courts.

From what has been said above it is apparent that the conclusion reached by this court in the case of *In re Estate of Nelson,* supra, was not only correct but inevitable. An appeal notice signed by an attorney from another state, who is not admitted to practice in Oregon, can not be of any more effect in conferring jurisdiction upon this court to hear the cause than would be a notice signed by any layman not in anywise connected with the litigation. The court takes judicial knowledge of the attorneys regularly admitted to practice before it. It has disciplinary control over them, and when they appear as representing litigants it is presumed by the court that they have authority so to do.

Under § 32-108, supra, an attorney from another state can be regularly admitted to practice in this state as an attorney, provided that the state of which he is a resident or citizen "admits to its bar, and to practice

in its courts, attorneys who are citizens of this state". Under the laws of Washington and the rules of its supreme court an attorney who is a citizen of this state can not be admitted to practice in its courts: Vol. 2, § 139-4, Remington's Rev. Stat. of Washington; Rule 2, Rules of Admission of the Supreme Court approved October 30, 1933.

We see no reason for disregarding the plain provisions of the Oregon statutes or in overruling and casting aside the prior decisions of this court on the subject now before us. Therefore, the appeal should be dismissed.

---

ROSSMAN, J. (dissenting). On the same day that the challenged notice of appeal was served and filed, the appellant served and filed a document captioned as follows:

"IN THE CIRCUIT COURT OF THE
STATE OF OREGON
FOR MARION COUNTY
No. 22798
NORTHWESTERN NATIONAL IN-
SURANCE COMPANY, a corporation,
and R. N. KAVANAUGH,
                                    Plaintiffs,
            vs.
A. H. AVERILL, as Insurance Commis-
sioner of the State of Oregon,
                                    Defendant."

From the first paragraph of the instrument, we quote the following:

"* * * NORTHWESTERN NATIONAL IN-SURANCE COMPANY of Milwaukee, Wisconsin, a corporation, and R. N. Kavanaugh, plaintiffs in the above entitled Court and cause, appeal to the Supreme

Court of the State of Oregon from that certain judgment heretofore, to wit: on June 29th, 1934, rendered and entered in the above entitled Court and cause in favor of the defendant, A. H. AVERILL, as Insurance Commissioner of the State of Oregon, and against the plaintiffs, NORTHWESTERN NATIONAL INSURANCE COMPANY of Milwaukee, Wisconsin, a corporation, and R. N. KAVANAUGH.''

The instrument is signed thus:

''NORTHWESTERN NATIONAL INSURANCE COMPANY
of Milwaukee, Wisconsin,
By Guy E. Kelly, Its Attorney,
R. N. Kavanaugh

R. N. Kavanaugh
NATIONAL SURETY CORPORATION,
By W. R. Gilham, Attorney-in-Fact.''

Section 7-503, Oregon Code 1930, provides:

''If the appeal is not taken at the time the decision, order, judgment or decree is rendered or given, then the party desiring to appeal may cause a notice signed by himself or attorney, to be served on such adverse party. * * * Such notice shall be sufficient if it contains the title of the cause, the names of the parties, and notifies the adverse party or his attorney that an appeal is taken to the supreme or circuit court, as the case may be, from the judgment, order or decree or some specified part thereof.''

Thus, the requirements are (1) title of the cause; (2) names of the parties; (3) notification of appeal; (4) identification of judgment; and, possibly, (5) signature by party or attorney. Reverting to the aforementioned instrument, it will be observed that it contains every requirement exacted by our statute; not a single item is missing. The title of the cause is stated; the names of the parties are given; notification of purpose to appeal is declared; the judgment from which

the appeal is to be taken is clearly identified; and the signatures of the parties are subscribed to the instrument. If Guy E. Kelly, who signed the plaintiff's name to the instrument, was authorized to do so by his client, the signature is valid. Our statute does not provide that the signature must be attached by a member of the Oregon bar. A presumption exists that Kelly possessed the requisite authority: Mechem on Agency (2d Ed.) § 268, and 21 R. C. L., Principal and Agent, p. 858, § 36. Moreover, as will be observed, the word "by" also precedes the name of R. N. Kavanaugh, who is a member of the Oregon bar. Kavanaugh then drew a line under his name, after which he signed in his own behalf. He, too, is a plaintiff. We have intentionally omitted mention of the fact that this instrument is entitled "Undertaking" and that the above-quoted paragraph is succeeded by two others wherein the principals and their surety undertake to pay whatever costs may be adjudged on appeal. But the mere fact that, besides being a notice of appeal, it is also something else does not deprive it of its quality as a notice of appeal. The statute does not require that the notice of appeal and the undertaking must be written on two separate sheets of paper. Had it been labeled "Notice of Appeal and Undertaking" no one would question its efficacy. A wrong label never vitiates a jural document. Instruments are tested by their contents, not by the label. Hence, here we have an instrument which conforms strictly to the requirements of our statute, and which, in itself, constitutes a sufficient reason for deeming the appeal valid. The appeal should not be dismissed.

But if further reasons for sustaining the appeal are needed, they are present. If our decision entitled *Estate of Nelson,* 101 Or. 14 (198 P. 892), cited by the

majority, holds that an appeal must be dismissed, even though the respondent has waived a defect in the notice of appeal by (1) filing a brief which argues the merits of the action; (2) appearing generally upon the day of the argument and not only protesting against the proposed dismissal of the appeal, but also declaring that a dismissal "so far as the defendant in this case is concerned will be a matter of great regret", then it seems clear that the decision should be cited only for the purpose of being overruled. But the decision in *Estate of Nelson* does not warrant the action which the majority proposes to take. In that case the prospective respondent filed no brief upon the merits of the cause. He appeared for a single purpose only: to move for the dismissal of the appeal. Nothing that he did could be deemed a waiver of the purported defect in the notice of appeal. Furthermore, the dismissal was not by the court upon its own motion, but the motion of the prospective respondent. In that case, one Johnson had sought in the county court to be appointed administrator of Nelson's estate. When his application was denied he filed a notice of appeal signed by an attorney who was not a member of the Oregon bar. The executors thereupon filed in the circuit court a motion which stated: "* * * appearing specially for the purposes of this motion * * * move the Court to dismiss the pretended appeal". From an order of the circuit court sustaining the motion, Johnson appealed to this court where the order was affirmed. In the instant case the respondent has never moved for a dismissal of the appeal. Disregarding this technical defect, which so much impresses the majority, defendant's counsel (the attorney general) filed a brief of forty-seven pages which concerns itself solely with the merits of the cause. When the cause was

called for argument and an intimation was made that the appeal would have to be dismissed on account of the aforementioned purported defect, the attorney general stated that he would gladly waive the defect, but that if the dismissal were made he would regard it with great regret. Thus, we see that there is a vital distinction between the circumstances in this case and those present in *Estate of Nelson*. Before proceeding with a further discussion of the legal principles applicable to the contemplated dismissal, let us turn once more to the remarks of the attorney general which were made upon the oral argument. At that time, referring to the appellant, he declared: "If it is denied the right to submit the matter to this court it would be without further relief." This is, therefore, a matter of grave consequence to the appellant.

Before considering the waiver feature, let us determine whether the fact that the notice of appeal is signed by an attorney who is not a member of the Oregon bar denies to it validity. Plaintiff's attorney has been authorized to practice his profession by the supreme court of the United States, by the Federal circuit court of appeals, by the Federal district court, and by the supreme courts of the states of Washington and South Dakota. In holding that a notice of appeal, not signed by a local attorney, is invalid, the decision in *Estate of Nelson* stands alone although numerous other states have statutes similar to ours. From the earliest of times the courts have refrained from penalizing the client for the failure of his attorney to comply with some regulation imposed upon the profession. The following excerpt taken from *DesBrisay v. Mackey*, 12 N. B. 138, gives a good review of the English decisions:

"" "* * * The construction given to these statutes is, that the neglect of the attorney to take out his

certificate, will not prejudice the proceedings in the suit, so as to injure the client.' Chit. Arch., 8th ed., 51; Tidd's Pr., 73; 2 Chit. Gen. Pr., 16. 'The reason for this,' says Best, C. J., in Reeder v. Bloom, (3 Bing. 10,) 'is, that the statutes show that the Legislature never intended to touch the suitor, *because all the punishment they inflict is directed against the attorney,* who, if he practices without a regular title, is disabled to sue for his costs.' In Smith v. Wilson, (1 Dowl. 545) it was held that a judgment signed by an uncertificated attorney was not irregular; so, bail may be put in by an uncertificated attorney. Anon. 2 Chit. R. 98. In Welch v. Pribble, (1 D. & Ry. 215,) it was held to be no ground for cancelling a bail bond, that the attorney who sued out the writ had not taken out his certificate. Bayley, J., saying that the interests of the client were not to suffer by the negligence of the attorney. Hilleary v. Hungate, (3 Dowl. 56,) and Glynn v. Hutchinson, (3 Dowl. 529,) were decided on the same principle. The only case we have found where a different rule was adopted, is Patterson v. Powell, (9 Bing. 620,) where a notice of trial, given by an attorney who had omitted to take out his certificate, was set aside as irregular. The Court said, 'the notice was signed by one who had not taken out his certificate, and therefore was not entitled to practice at all.' None of the authorities appear to have been cited in this case. Under the Stat. 6 and 7 Vict., c. 73, it has been held that an uncertificated attorney may be a good attesting witness to a warrant of attorney. Holdgate v. Slight, (9 Law & Eq. R., 331.) Erle, J., in giving judgment, says: 'The statute 6 and 7 Vict., c. 73, § 2, enacts that no person shall act as an attorney unless admitted and enrolled, and otherwise duly qualified. Admission and enrollment are considered conditions precedent to the power of acting as an attorney. But when we come to Sect. 26, the clause relating to the effect of the want of a certificate, we find the provision that no person who as an attorney shall sue, prosecute or carry on any action, suit or other proceeding, without having previously obtained a stamped certificate, shall be capable of

maintaining any action for his fees for carrying on such business. It seems to me, therefore, that an attorney, though uncertificated, may do acts in his capacity of attorney, which shall be valid, but that the result will be that he will in such case lose his fees.' ''

The decision from which the above quotation was taken held that the proceedings conducted by the unlicensed attorney were without validity, under the belief that the Canadian statute expressly required such a holding.

In *Elson v. Sullivan* (Iowa), 186 N. W. 769, a defect in the notice of appeal similar to the one before us existed. We quote from the decision:

"The second ground was that plaintiff's attorney, who assumed to act for her in the matter of taking such appeal, had not been duly admitted to practice. This was sufficient ground why he should not be permitted to practice. We do not deem it sufficient ground for dismissal of defendant's appeal."

In *North Laramie Land Co. v. Hoffman,* 27 Wyo. 271 (195 P. 988), and 26 Wyo. 327 (184 P. 226), the Wyoming court was confronted with a motion to dismiss an appeal based upon the circumstance that the petition in error was not signed by a Wyoming attorney. It bore the signature of a member of the Illinois bar. The Wyoming practice required such papers to be signed by an attorney, and defined an attorney in language similar to the Oregon statutes. The court, in its first decision (above cited), sustained the motion and thereby dismissed the appeal. A motion was then made by the appellant for a reconsideration. Upon reconsideration, the court, in a lengthy decision, reversed itself and held that the mere fact that the signer of the petition in error was not a member of the local

bar did not deny it validity. Its second decision is above cited. We now quote from it the following:

"And upon further consideration of the matter, we are fully persuaded that the former decision, declaring the petition in error to be a nullity and insufficient to commence the proceedings, is erroneous. No briefs were filed at the former hearing on the motion to dismiss, and the argument at that time, as we recall it, did not touch particularly the question of whether the failure to properly sign a petition was a mere formal defect, or rendered the petition a nullity, but was confined to the question whether the court had acquired jurisdiction by reason of the entry on the docket of the appearance of local counsel for plaintiff in error and the County Attorney of Platte County as attorney for defendants in error and the application of other counsel for defendants for an extension of time to file briefs, which was filed concurrently with the motion to dismiss. We feel sure, at least, that the authorities now brought to our attention as to the effect of a failure to sign a petition were not cited at the former hearing. Nevertheless we do not place the fault of our error aforesaid altogether upon counsel. We were led into the error, without thoroughly investigating the authorities, thinking that the question before the court was chiefly the right of the nonresident attorneys to sign alone the petition, and with that the effect of a mere docket entry of the appearance of associate counsel but which was deemed insufficient to cure what was then considered to be a jurisdictional defect.

The petition in error not having been subscribed by anyone having authority to subscribe it, it stood as an unsigned petition. But by the clear weight of authority, under our and similar code provisions, a petition not signed or improperly signed, whether it be a petition to commence a civil action or a petition in error, is not a nullity, and the failure to properly subscribe the same is merely a formal defect, which may be waived, or may be cured by amendment; and to correct a mere matter of form, an amendment of a petition in error may be allowed even after the expiration of the

time for bringing the proceedings. (31 Cyc. 524; 1 Standard Proc. 905; 3 C. J. 1090, note 8; Conn. v. Rhodes, 26 O. St. 644; C. H. & D. Ry. v. Bailey, 70 O. St. 88, 70 N. E. 900; Bantz v. Rover, 14 O. C. C. (N. S.) 218; Moore v. Moran, 64 Nebr. 84, 89 N. W. 629; Gulf Railroad v. Owen, 8 Kan. 409; Manspeaker v. Bank, 4 Kan. App. 768, 46 Pac. 1012; Sims v. Dame, 113 Ind. 127; Coleman v. Bercher, 94 Ar. 345; 126 S. W. 1070; West Mountain L. & S. Co. v. Danley, 38 Utah 218, 111 Pac. 647; McIntyre v. Smyth, 108 Va. 736, 62 S. E 930; Carter v. Atkinson, 12 Ga. App. 390, 77 S. E. 370; Baird v. Prewitt, 158 Ky. 793, 166 S. W. 771; Cochran v. Thomas, 131 Mo. 258, 33 S. W. 6; O'Donnell v. Chambers, Tex. Civ. App., 163 S. W. 138,). And see, Riordan v. Horton, 16 Wyo. 363, 94 Pac. 448; Toledo v. Converse, 65 O. St. 401, 62 N. E. 438, holding a petition in error to be amendable as to matters of form after the time allowed for bringing error proceedings, and under similar code provisions, the following cases to the same effect: Cogshall v. Spurry, 47 Kan. 448, 28 Pac. 154; Bruner v. Nordmier, 48 Okla. 415, 150 Pac. 159; Haynes v. Smith, 29 Okla. 703, 119 Pac. 246.''

These two are the only decisions, apart from *Estate of Nelson,* concerning the validity of a notice of appeal signed by a nonresident attorney which our examination of the authorities has brought to light. It will be observed that in none of these three decisions had the respondent made a general appearance. To the contrary, in all three of these instances he was the one who moved for the dismissal of the appeal. It occasionally happens that an attorney who is not a member of the local bar signs some process and the question then occurs as to the validity of the instrument. An instance is *Rader v. Snyder,* 3 W. Va. 413, from which we quote the following:

''Moreover, if the suit was brought by an attorney not qualified to practice, that was no good cause to dismiss the plaintiff's suit, but the attorney should himself suffer the punishment imposed by law.''

See also *Peterson v. Parriott,* 4 W. Va. 42, *Rouiller v. Schuster Co.,* 212 Fed. 348, and *Richards v. Bostock,* 31 The Times Law Reports, 70. The following is taken from 30 A. L. R. 715:

"The courts in general hold that the absence of the signature of the judge from a judgment or decree, or from the minutes, in no way affects the validity of the judgment or decree, even though such signature may be required by statute. * * *"

Here follows a lengthy compilation of authorities.

Thus, we see that the decision entitled *Estate of Nelson* stands alone, and that the reasoning employed by the early English courts, as well as present-day American courts, far from lending it support, demands a conclusion that the notice of appeal was sufficient. If the majority cannot perceive the difference between the facts present in *Estate of Nelson* and those now before us they ought to overrule that decision rather than follow it. A conclusion is clearly warranted that the present notice of appeal is not invalid merely on account of the fact that a nonresident attorney signed it.

But waiver is still another reason why the appeal should not be dismissed. It is a matter of such vital consequence to our practice that we feel impelled to set forth our views at sufficient length.

In *Estate of Nelson* the decision declares: "A notice of appeal is jurisdictional and every requirement of the law prescribing the time and means of taking the appeal is jurisdictional and cannot be waived by the parties or the court." As we shall shortly see, this court has disregarded defects in notices of appeal. The defects to which we shall call attention were failures to comply with requirements of § 7-503, Oregon Code 1930, as positive as the requirement concerning signature. In the early decision entitled *Oliver v. Harvey,*

5 Or. 360, this court for the first time stated that the service of the notice of appeal was jurisdictional. It is difficult to understand how a notice of appeal can confer jurisdiction upon this court. Jurisdiction of the cause is conferred by the constitution of this state. Jurisdiction over the prospective defendant is obtained by the service upon him of a notice of appeal. It performs the same function as a summons. Section 7-503, Oregon Code 1930, does not grant to defeated litigants the right to take an appeal. That right was conferred when the people, through the constitution, created the supreme court as an appellate court. Section 7-503 merely prescribes and regulates the manner in which an appeal may be taken. The defendant, by timely application, may take advantage of the would-be appellant's failure to comply with the requirements of this statute. Notwithstanding these principles, which are recognized by most courts, the early decision of *Oliver v. Harvey* talked about the notice of appeal as being "jurisdictional". The manner in which that error crept into our jurisprudence can be plainly traced. In *Oliver v. Harvey* the notice of appeal stated: "S. H. Oliver appeals from the judgment of the circuit court of said county", but did not mention the county. This defect was held to be fatal, but the appellant argued that a stipulation which was "signed by the counsel for the respective parties, continuing this cause from the last August term of this court until this term", constituted a general appearance and argued that the general appearance waived the defect in the notice of appeal. While disposing of this contention, Mr. Justice Prim, the author of that decision, spoke of the notice of appeal as being jurisdictional. He cited *Bonds v. Hickman*, 29 Cal. 460, as the sole authority for the holding. He lifted out of *Bonds v. Hickman* one of its

paragraphs and used it as his own language, failing to credit it to the California court. It was in this paragraph that the unfortunate error crept into our Oregon jurisprudence. *Bonds v. Hickman,* however, held to the direct contrary of *Oliver v. Harvey,* and had Mr. Justice PRIM followed the authority of the case he cited, and from which he took one of its paragraphs, the appeal in *Oliver v. Harvey* would not have been dismissed. In *Bonds v. Hickman* the transcript on appeal contained no notice of appeal whatever, but it did recite the following stipulation: "Notice of appeal admitted as duly filed and served, also * * *." We now quote from the California decision:

"The respondent moves that the appeal be dismissed on the ground that the Court had no jurisdiction of the case, because, as he alleges, no notice of appeal was filed. The motion is based on a certificate of the Clerk of the District Court, and an affidavit stating that in fact no notice of appeal was filed. In the counter affidavit filed by the appellant, it is not stated that a · notice of appeal was filed."

The court declined to dismiss the appeal and held the respondent bound by the recitals of the stipulation. In so holding, the court declared that the principles embodied in the paragraph which Mr. Justice PRIM later lifted from the decision and employed in *Oliver v. Harvey* were not determinative of the issue. Two pages beyond the unfortunate paragraph, printed in italics, is the following headline:

*"A stipulation in a transcript that notice of appeal was filed cannot be attacked by affidavits."*

Thus, in *Oliver v. Harvey,* which manifestly indicates carelessness of preparation, the principle upon which the majority relies unfortunately crept into our jurisprudence. *Oliver v. Hardy* declares that the California statutes regulating the filing and service of the notice

of appeal are "exactly like ours". As we shall later see, California holds that a general appearance constitutes a waiver of a defective notice of appeal. *Wolf v. Smith,* 6 Or. 74, is the next case construing our statute regulating appeals. That case was originally commenced in the county court of Polk county. The defendant in the county court recovered judgment. The plaintiff then appealed to the circuit court, but before the cause was tried in the circuit court the papers became lost and an order was thereupon made permitting the substitution of copies. In the circuit court the plaintiff recovered judgment. Then—that is, after the plaintiff had recovered judgment in the circuit court—the defendant moved to dismiss the appeal from the county court. This court sustained the motion because the parties, in making substitution of the lost papers, neglected to insert in the record a copy of the lost notice of appeal. The decision stated:

"The fact that the parties appeared and that the cause was thereupon heard and determined in the circuit court cannot be taken as curing the defect. In Oliver v. Harvey, 5 Or. 361, it was held that even a waiver of filing a notice of appeal by stipulation is not equivalent to filing the same, and that consent cannot confer jurisdiction. The appeal is jurisdictional and must be taken in the mode prescribed by the code (29 Cal. 461). The appellant must bring into the appellate court a perfect record. (27 Ind. 1)."

Thus, the holding in *Bonds v. Hickman* was again misinterpreted, and the fact that the parties retried the case in the circuit court, resulting in the entry of a judgment, availed them nothing. Had *Bonds v. Hickman* (which is 29 Cal. 461) been followed, the appeal would not have been dismissed. Apparently this court, in taking that view, believed there was something sacrosanct about the statute governing the notice of

appeal which even a final just judgment of the circuit court could not surmount. It will be observed that 27 Ind. 1 was cited as authority for the new development. (The citation should be 27 Ind. 11.) In that case the defect was not in the notice of appeal but in the failure to bring to the appellate court the complaint—a very different proposition. In *Archey v. Knight,* 61 Ind. 311, we have virtually the same situation that was before this court in *Wolf v. Smith.* In that case, the plaintiff had recovered a judgment in the lower court and the defendant appealed to the supreme court, but neglected to serve the notice of appeal upon the plaintiff. The latter's attorney, however, went to the office of the clerk of the supreme court where, upon giving his receipt, he was permitted to withdraw the transcript and the defendant's brief which he kept for many days. The court, being unaware of the fact that no notice of appeal was served, called the case for argument, and later announced its decision reversing the judgment in plaintiff's favor. Then the plaintiff moved to dismiss the appeal. This the court declined to do, stating that the plaintiff had notice of the appeal and that his motion to dismiss came too late. Thus, we see that neither 27 Ind. 11 (cited in *Wolf v. Smith,* 6 Or. 74) nor the Indiana practice, as revealed in the decision just reviewed, support *Wolf v. Smith.*

As is plainly evident, the decisions in *Oliver v. Harvey* and *Wolf v. Smith* were carelessly prepared. No comment is needed. Yet these two decisions which unfortunately misinterpreted the effect of *Bonds v. Hickman* laid the foundation for the proposition that the notice of appeal is somehow jurisdictional, and they are in reality the authorities upon which the majority depend.

From time to time in subsequent decisions *Oliver v. Harvey* and *Wolf v. Smith* were frequently cited as authority for the proposition that the notice of appeal is jurisdictional, and that the appellant must bring to this court a perfect record. For a while the decisions adhered rigorously to the principles announced in those two early cases. For instance, in *Poppleton v. Nelson,* 10 Or. 437, the appeal was dismissed even though the notice of appeal, perfect in form, was signed by the would-be appellant, instead of by his attorney. In *Rodman v. Manning,* 50 Or. 506 (93 P. 366), the notice of appeal as it appeared in the transcript showed that it was filed August 26 and served September 26. The motion to dismiss the appeal was allowed on account of this seeming discrepancy which was nothing more than a typographical error. The appeal was dismissed even though the respondent had filed his brief in this court. *Oliver v. Harvey* and *Wolf v. Smith* were both cited as authority for the proposition that a defect in the notice of appeal could never be waived. *Lecher v. St. Johns,* 74 Or. 558 (146 P. 87), brought to this court a notice of appeal in which the judgment from which the appeal was taken was thus described: "The judgment made and entered on the 23rd day of July, 1914, in the circuit court for the state of Oregon for the county of Multnomah." This description was held insufficient because "there are several departments of the circuit court of the state of Oregon for Multnomah county". As stated in *Lee v. Gram,* 105 Or. 49 (196 P. 373, 209 P. 474, 27 A. L. R. 1001), this decision "ignored the title of the cause and the names of the parties although made elements of sufficiency by the statute".

In *Lee v. Gram,* just cited, this court made a new start in an effort to simplify the process of taking ap-

peals. It there sought to rid our practice of the numerous refinements and technicalities which, as there stated, had resulted in the dismissal of "cases in considerable number". That decision, written by Chief Justice Burnett, took as its starting point 1899 Session Laws, page 227, adopted 23 years previously. *Lecher v. St. Johns,* supra, was decided 16 years after the enactment of the 1899 Session Laws yet it did not mention that liberalizing statute. In *Lee v. Gram* the notice of appeal and the undertaking described the judgment from which the appeal was being prosecuted as having been rendered November 28, 1920, whereas, the truth was that the judgment was rendered October 28, 1920. The motion to dismiss the appeal was, nevertheless, denied, the decision stating: "The decisions of the courts and the legislation affecting the question have been most liberal in practice. * * *. Under the present statute the only indicia required by law to identify the judgment are the title of the cause, the names of the parties and notification to the adverse party or his attorney that an appeal is taken to the supreme or circuit court, as the case may be, from the judgment, order or decree." The decision concluded as follows: "In view of the liberal legislation upon the subject and the equal leniency of the court in dealing with this matter in the decisions of later years, we conclude that the notice here involved is sufficient." It will be observed that in *Lee v. Gram* the decision stated that one of the "indicia required by law to identify the judgment" is "the names of the parties". In *In Re Water Rights of Willow Creek,* 119 Or. 155 (236 P. 487, 236 P. 763, 237 P. 682, 239 P. 123), we again liberalized upon the practice. The notice of appeal in that case described the appellants as "Willow River Water Users Association, including all of the

members thereof''. The motion to dismiss the appeal was predicated upon the fact that none of the parties to the case bore the name just mentioned. That title was applied for convenience in designating the 40 or so persons who were the real plaintiffs. In denying the motion, the decision stated: "By referring to the transcript, the names of the members of the association are readily ascertainable. There cannot possibly be any confusion resulting from the use of Willow River Water Users Association. All the parties to this litigation are familiar with the names of those composing the association. * * * It has been frequently held by this court that the transcript may be used to determine the sufficiency of the notice of appeal where it is ambiguous or defective." Thus, we see that although our statute requires that the notice of appeal shall give the names of the parties, a failure to do so will not be deemed a ground for dismissal, provided the information is contained in some other part of the transcript. Yet it will be observed that the requirement that the notice of appeal state the names of the parties is just as positive as the requirement that the notice be signed by the appellant or his attorney. In *State ex rel. v. Fendall,* 135 Or. 142 (295 P. 194), the notice of appeal was signed by neither the state nor the district attorney but (according to the motion challenging its sufficiency) "was signed by private attorneys who had no authority to represent plaintiff, the State of Oregon". Under our statute § 5-606, Oregon Code 1930, the district attorney had absolute control of the action involved in that decision: *Baskin v. Marion County,* 70 Or. 363 (141 P. 1014). Neither the verity of the quoted statement nor the application of the aforementioned section of our code was challenged by the appellant; nevertheless, the

motion to dismiss was denied because the reply, which, of course, was no part of the notice of appeal, bore the signature of the attorneys who had signed the notice of appeal. In so holding, we overruled *Baskin v. Marion County,* supra, which held to the direct contrary, and which deemed the legal principle involved so simple that "we deemed an opinion unnecessary" until a petition for a rehearing was filed. In the Baskin case the attorney who signed the notice of appeal, according to the transcript, represented the county in the circuit court as its sole attorney. In overruling that decision in *State ex rel. v. Fendall,* supra, we thought so little of the Law of Precedents, which now weighs so heavily upon the minds of the majority, that we did not even mention *Baskin v. Marion County.* Thus, in *Lee v. Gram,* in *In Re Water Rights of Willow Creek,* and in *State ex rel. v. Fendall* we finally got away from the myth that the notice of appeal must be perfect and that it must contain every item of information that § 7-503 specifies. The Chinese wall erected by the erring hands of 5 Oregon and 6 Oregon for the protection of the appeal statute was at last pierced. The false work was demolished. A means was discovered whereby one appealing in good faith could reach this court, even though he committed some minor breach of the statute. Substantial compliance sufficed, even though the respondent moved to dismiss and made no general appearance. The holdings, therefore, do not regard the appeal as dependent solely upon the notice of appeal, but permit the judge to cast a wandering eye upon other portions of the record so that aid may be given to a defective notice. Without reviewing our recent decisions at greater length, it suffices to state that they clearly indicate that *Oliver v. Harvey* and *Wolf v. Smith,* together with their offspring, have passed

into the beyond where they no longer influence our present practice. In fact, in *In Re Water Rights of Willow Creek,* supra, we reiterated the language of Mr. Chief Justice McBride employed in *Oxman v. Baker County,* 115 Or. 436 (234 P. 799, 236 P. 1040), wherein he declared: "It is not the policy of the courts to seek occasion to dismiss appeals upon merely technical grounds." In *In Re Water Rights of Willow Creek* the decision branded the ground upon which the motion to dismiss was predicated (failure to give the names of the parties appellant) as "very technical" and, as we have seen, denied the motion. In *Banfield v. Schulderman,* 137 Or. 256 (299 P. 323, 3 P. (2d) 116), a motion to dismiss the appeal was denied, although the notice of appeal was prematurely given and in so doing our decision quoted from an opinion of the supreme court of Washington as follows:

"The statute governing appeals should be liberally construed to the end that parties may have a review by this court of the rulings of the superior court when they so desire."

Reverting to the decision of the majority, it will be observed that they hold that the notice of appeal must be "in strict conformity to the statute". But, as we have seen, we got away from these technicalities and refinements in 1922 when *Lee v. Gram* was written. We there freed ourselves from a subservient attitude towards a literal interpretation of the statute when literal interpretation served no good purpose but defeated the ends of justice. We there freed ourselves from the cobwebs of our ancient decisions by referring to a statute enacted 23 years previously. Now, to announce that a notice of appeal must be "in strict conformity to the statute" is a throwback which is

unworthy of this court and which will only be a source of constant embarrassment.

In *Oliver v. Harvey,* Mr. Justice PRIM pointed out that the California statute is "exactly like ours". A comparison of § 7-503, Oregon Code 1930, with the California legislation in effect when the California decisions, which we shall shortly review, were decided reveals that no substantial difference exists between the two. In deciding *Oliver v. Harvey* and *Wolf v. Smith* we veered away from the California practice, even though we cited a California decision as authority for our holding. But in *Lee v. Gram* we entered upon a new course which, as applied and extended in recent holdings, has brought us to the point where we now virtually deem that a notice of appeal performs a function similar to that of a summons. Instead of believing that a notice of appeal is somehow "jurisdictional", we have begun to construe the statutes which authorize its use as mere regulations of the right of appeal. One who seeks to avail himself of the right must comply with the statute or otherwise have his appeal dismissed upon motion of his adversary. That being true, a technical breach of the statute is subject to waiver. Nothing to the contrary is demanded by the fact that § 7-503, Oregon Code 1930, provides: "An appeal shall be taken and perfected in a manner prescribed in this section and otherwise." These words merely forbid the use of other competing methods of appeal and were not intended to invoke technical compliance with the requirements of the statute. We now turn to the California practice and quote from 2 Cal. Jur. § 117:

"It is well established that an appellate court may obtain jurisdiction of an appeal as well by voluntary appearance by an adverse party as by service of notice of appeal upon him. The requirement that notice of

appeal be served upon the adverse party is for the protection of such adverse party, and the service of the notice, like service of a summons, may be waived by him or his attorney, and is waived by a voluntary appearance.''

The manner in which the practice operates is well illustrated in *Salisbury v. Yawger,* 184 Cal. 783 (195 P. 682), wherein one of the judges of the Court of Appeals, upon his own motion, dismissed the appeal. From his order an appeal was taken to the supreme court. The decision of the latter pointed out that while the notice of appeal was defective, nevertheless, since the respondent had actual notice, as was indicated by one of his letters, the lower court had acted erroneously. The appeal was reinstated.

The federal supreme court says nothing about the notice of appeal being jurisdictional. It treats such a notice as a summons and if the notice accomplishes the purpose of bringing the respondent into court the appeal is sustained notwithstanding irregularities: *Bigler v. Waller,* 12 Wall. 142 (20 L. Ed. 260), and *United States v. Gomez,* 1 Wall. 690 (17 L. Ed. 677). One need not cite the numerous provisions of our statutes which prescribe in detail the contents of a summons and specify the manner in which each shall be signed and served. These provisions are certainly far more exacting than the provisions regulating the notice of appeal. No comment is needed to show that a prospective defendant is more in need of these statutory protections than he is in need of the protection afforded by § 7-503. Yet irregularities of the contents or service of a summons are universally regarded as waived by a general appearance: Bowers, Process and Service, §§ 9 to 18. It is impossible to understand why the principles applicable to a summons should not be equally applicable to a notice of appeal. The federal supreme court has held

that the immunity from suit granted to states by the eleventh amendment to the federal constitution may be waived by general appearance: *State of Missouri v. Fiske,* 290 U. S. 18 (78 L. Ed. 145, 54 S. Ct. 18). It will be recalled that the eleventh amendment provides: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by * * *." If, notwithstanding this constitutional provision, the court can acquire jurisdiction over a state, it is certainly most unreasonable to hold that voluntary appearance cannot waive a defect created by a minor infraction of § 7-503.

A few moments ago a copy of the decision of Mr. Justice BAILEY was received. He states: "An appeal to this court from the circuit court is a new proceeding." He fails to distinguish between a review instituted by a writ of error which is commonly regarded as the commencement of a new suit (3 C. J., Appeal and Error, p. 304, § 12) and a review instituted by an appeal which is commonly regarded as nothing more than a continuation into the appellate court of the suit pending in the trial court: 2 R. C. L., Appeal and Error, p. 28, § 4. An appeal subjects the purchaser, therefore, to the doctrine of pendente lite, while the writ of error does not.

The same decision seeks to distinguish the holdings in *North Laramie Land Co. v. Hoffman,* 27 Wyo. 271 (195 P. 988), and 26 Wyo. 327 (184 P. 226), by stating: "Had it not been for the fact that a local attorney was associated with the nonresident attorneys in that instance the 'defective' petition in error could not have been amended." But the attempted distinction entirely overlooks the fact that one of the appellants in this case (R. N. Kavanaugh), who was a party

plaintiff in the circuit court, is a member of the local bar in good standing. It will be observed from the document previously quoted that he is associated in this cause with Mr. Kelly.

The efforts of the specially concurring opinion to distinguish between the jurisdiction of this court and that of the circuit court for the purpose of showing that the rules applicable to a summons ought not be applied to a notice of appeal are fruitless. Of course, there is a distinction between the two courts, as there also is between the courthouses in which the courts are held, but the question still remains, is there a distinction between the function performed by a notice of appeal and that performed by a summons? None has been pointed out. The mere fact that a respondent, served with a defective notice, may file his brief after the 60-day period avails nothing. In the present instance the notice of appeal was served within the 60-day period. Had the notice of appeal met all the requirements exacted by the majority the brief would not have been filed an instant sooner. In the circuit court a defendant has only a limited period of time in which to appear. Yet if he appears after that time, in response to a defective summons, jurisdiction has been gained. It may even be true that he appears after the statute of limitations has run.

The observation is made in the specially concurring opinion that waiver is never available where the statute affords only a limited period of time in which to take an appeal. It will be remembered that California subscribes to the doctrine of waiver. We now quote from Deering's Code of Civil Procedure and Probate Code (1931) § 939:

"An appeal may be taken from any judgment or order of a superior court from which an appeal lies

under any provision of this code, or of any other code, or under any other statute, within sixty days from the entry of said judgment or order.''

It would be most unfortunate to dismiss this appeal. In this proceeding the parties availed themselves of the privileges afforded by §§ 2-1301 to 2-1303, inclusive, Oregon Code 1930, by submitting the controversy without action, thereby virtually dispensing with the need for attorneys and availing themselves of counsel as defined in *Estate of Nelson,* supra. Since jurisdiction can be conferred upon the circuit court in that manner, it is difficult to believe that something different is required to invoke the action of this court.

But, now that the majority have spoken, and have established the principle that an appeal must be dismissed upon the court's own motion merely on account of some defect in the notice of appeal, let us try to foresee what would happen in the event that a similar defect should be present in the notice of appeal filed in a capital case, or in any other case of grave concern to the parties or to the state. Let us assume that before the defect is discovered we have announced our decision, pointing out that flagrant error was committed in the circuit court. Would we then, upon discovery of the defective notice of appeal, recall our decision and, upon our own initiative, dismiss the appeal, thereby consigning the appellant to the unjust decision? If not, are we going to do so in this case because, as is pointed out by the majority, the present appellant happens to be a nonresident, seeking the protection of our constitution?

I dissent.

BELT, J., concurs.